***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby reverses the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and following, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit # 1, as
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the plaintiff-employee and defendant-employer in March 2000.
3. The Hartford is the carrier at risk.
4. The plaintiff's average weekly wage is $367.60, yielding a compensation rate of $245.19 per week.
5. All parties have been correctly joined and there is no misjoinder of nonjoinder of parties.
6. The following Industrial Commission Forms are admitted into evidence as
Stipulated Exhibit # 2:18,19,61,22 33.
7. Plaintiff's medicals regarding this claim are admitted into evidence as Stipulated Exhibit # 3.
8. Plaintiff's Recorded Statement of 12 October 2000 is admitted into evidence as Stipulated Exhibit # 4.
9. Plaintiff's Responses to defendant's Interrogatories are admitted into evidence as Stipulated Exhibit # 5.
10. The Ergonomic Report of the Title Clerk position by Allan Gorrod is admitted into evidence as Stipulated Exhibit # 6.
11. The issues to be determined in this case are whether plaintiff suffers from a compensable occupational disease; and, if so, what, if any, benefits is she entitled. Defendant has requested attorney fees pursuant G.S. § 97-88.1.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Noonan, Dr. Wheeler and Mr. Gorrod are ruled upon in accordance with the applicable provision of the law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On 4 March 2000 plaintiff was a 29 year old female employed as a title clerk with defendant-employer. This job entailed processing vehicle title registrations and renewals. Plaintiff began employment with defendant-employer in June 1998. She originally just processed renewals but added leased vehicles, lien recording, lost tags, dealer transactions, out-of-state titles and individual transfers within two months after she received her notary status.
2. In May 2000 plaintiff's left arm and hand began hurting. Plaintiff informed her supervisor and she was sent to Dr. Lois Osier at Charlotte Orthopaedics for evaluation and treatment.
3. Plaintiff saw Dr. Osier on 16 May 2000 and complained of numbness and tingling in both hands. Plaintiff also complained of discomfort in the left trapezius muscle, which had been present for several months. Examination revealed full range of motion of the elbows, wrists and fingers. Dr. Osier recommended nerve conduction tests due to some positive Tinel's and Phalen's test.
4. Nerve conduction tests revealed no evidence of left or right carpal tunnel syndrome, or left or right ulnar neuropathy, or left cervical neuropathy.
5. By July 2000 plaintiff still experienced pain in both upper extremities. The pain continued to begin at the trapezius muscle and then extend down to the wrist.
6. On 9 August 2000 plaintiff saw Dr. Wheeler, upon referral from Dr. Osier. Plaintiff complained of bilateral hand pain, as well as neck and back pain. Dr. Wheeler studied plaintiff's posture and noted she was "taller sitting than standing" due to her short legs. This physiology leads to a propensity for back problems.
7. Dr. Wheeler treated plaintiff with medications and plaintiff received physical therapy. Dr. Wheeler initially diagnosed probable repetitive-use or cumulative trauma disorder affecting both upper extremities with tendonitis and myofascial dysfunction identified, also cervical segmental and soft tissue dysfunction and bilateral shoulder impingent.
8. On 24 August 2000 plaintiff's symptoms had not improved and plaintiff was frustrated and depressed due to the ongoing pain. Plaintiff's left shoulder had a greater spasm than the right. Plaintiff received a steroid injection in her left trapezius, and Dr. Wheeler excused plaintiff from work for two days.
9. At the 10 October 2000 plaintiff's left shoulder symptoms had increased. Dr. Wheeler excused plaintiff out-of-work until her next appointment on 7 December 2000. Physical therapy tended to increase plaintiff's pain. At the 7 December 2000 exam plaintiff's MRI of the left upper extremity showed an abnormality of the posterior superior labrum with possible small perilabral cyst. Dr. Wheeler placed plaintiff out-of-work indefinitely and referred her to Dr. Noonan for treatment of the left shoulder.
10. Dr. Noonan first saw plaintiff on 20 December 2000. Plaintiff complained of pain in the left arm and wrist, as well as numbness and tingling, and some painful popping in the left shoulder joint area. A MRI arthrogram revealed a posterior labral tear with a small apparent labral cyst. The rotation cuff was intact.
11. On 12 February 2001 plaintiff underwent arthroscopy of her left shoulder consisting of posterior labral repair, debridement superior labrum and debridement biceps tendon. The plaintiff had a significant tear, the labrum had basically separated from the socket.
12. Plaintiff improved after surgery but still complained of some numbness and tingling in her little finger and ring finger. Dr. Noonan attributed this to irritation of the ulnar nerve and can come from the arm in a sling.
13. Dr. Noonan released plaintiff to return to work on 2 April 2001 but restricted her to no work involving her left arm. By July 2001, although plaintiff had full range of motion and strength, the range of motion was a little painful. Plaintiff was at maximum medical improvement and retained a fifteen percent (15%) disability rating to her left arm.
14. Mr. Alan Gorrod, a certified ergonomic evaluator, evaluated the position of title clerk at defendant-employer on 23 October 2000. Mr. Gorrod observed five or six people performing title clerk functions. Plaintiff was not present and Mr. Gorrod did not observe her performing the job. The Full Commission accepts as competent evidence the conclusions by Mr. Gorrod that the position of title clerk is not likely to cause repetitive injury. Although Mr. Gorrod evaluated the job for risk factors for carpal tunnel syndrome and myofascial pain, the injuries initially claimed by plaintiff, it is also relevant to plaintiff's allegations concerning a shoulder injury. The greater weight of the evidence is that plaintiff did not suffer from carpal tunnel syndrome.
15. The greater weight of the evidence is that plaintiff's job duties did not cause or substantially contribute to plaintiff's left shoulder problems. Additionally, plaintiff's employment with defendant-employer did not place her at an increased risk of acquiring and aggravating shoulder problems as compared to members of the general public not so employed. Dr. Noonan explained that a labrale tear of the shoulder generally results from a traumatic event. Plaintiff, however, has not identified a single accidental event when the injury occurred and thereby has not established a compensable accidental injury. Although Dr. Noonan opined that, absent a traumatic event, repetitive motion could cause the tear, a careful reading of his testimony indicates that Dr. Noonan's testimony essentially is that he assumes the injury was caused by her work because he cannot find a cause for the injury. Dr. Noonan and Dr. Wheeler were not familiar with the duties of plaintiff's employment and the hypothetical questions asked by plaintiff's attorney were not an accurate description of the nature and frequency of plaintiff's work duties. Plaintiff's work was not repetitive. Neither Dr. Wheeler nor Dr. Noonan could describe the repetitive task that plaintiff allegedly performed that would cause the labrale tear; therefore, the opinions of Dr. Noonan and Dr. Wheeler concerning causation are given little weight.
 ***********
The foregoing findings of fact, and conclusion of law engender the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to establish that she sustained an occupational disease to her left shoulder. G.S. § 97-53 (13). The competent evidence fails to establish that plaintiff's injury was caused by her employment or that her employment placed her at an increased risk for the labrale tear than members of the general public not so employed.Id. The opinion testimony of Dr. Noonan and Dr. Wheeler is not accepted as competent because they are not familiar with plaintiff's work duties and stated that a labrale tear generally arises from a traumatic event rather than repetitive trauma. See Smith v. Beasley Enterprises, ___ N.C. App. ___, ___ S.E.2d ___, No. COA01-325 (2002) (Ordered published March 20, 2002). Plaintiff has failed to establish carpal tunnel syndrome or other occupational disease to her hand, arm or wrist. G.S. § 97-53(13). Plaintiff has also failed to establish an accidental injury to her left shoulder. G.S. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for compensation is DENIED.
2. The parties shall pay their own costs.
SIGNED this ___ day of ___, 2002.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER